**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

AMY L. C.,                                      )
                                                )
      Plaintiff,                             )
                                                )
v.                                              )
                                                )          Case No. 20-cv-00350-SH
KILOLO KIJAKAZI,[1] Acting                      )
Commissioner of Social Security,                )
                                                )
      Defendant.                             )

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amy L. C. requests judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f.   In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge.   For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see also id*. § 1382c(a)(3)(A) (regarding disabled individuals).   The impairment(s) must be "of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.   No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Under the five-step process, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[3]

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek*

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulation and provide, the first time mentioned, a parallel citation for Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

In December 2016, Plaintiff applied for Title II and Title XVI disability benefits. (R. 23, 295-302.)  Plaintiff initially alleged that she had been unable to work since January 2, 2015, due to depression, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and a brain injury.[4]  (R. 295, 297, 350-51.)  Plaintiff was 49 years old on the date of the ALJ's decision.  (R. 33, 295, 297.)  She has a college education and past relevant work as a housekeeping cleaner.  (R. 64-65, 351.)

Plaintiff's claims for benefits were denied initially and on reconsideration, and she requested a hearing.  (R. 89-118, 144-45.)  ALJ Christopher Hunt conducted two administrative hearings and issued a decision on November 13, 2019, finding Plaintiff not disabled.  (R. 23-33, 41-88.)  The Appeals Council denied review on May 29, 2020 (R. 1-6), rendering the Commissioner's decision final.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff

---

[4] In her briefing, Plaintiff concedes she was not disabled in 2015 or 2016 and asserts that she became disabled on January 1, 2017.  (ECF No. 16 at 6-7, 14; ECF No. 25 at 2.)

timely filed this appeal on July 21, 2020 (ECF No. 2), within 65 days of that order.  *See* 20 C.F.R. § 422.210(c).

The parties have fully briefed the issues, and this appeal is ripe for ruling.[5]

### III.    The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2023.  (R. 25.)  At step one, the ALJ concluded that Plaintiff engaged in substantial gainful activity in calendar years 2016, 2017, and 2018, but that there had been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity.  (R. 26.)  At step two, the ALJ found Plaintiff had the severe impairments of major depressive disorder and generalized anxiety disorder.  (*Id.*)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 26-28.)

The ALJ then determined Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: "The claimant has the ability to perform detailed tasks, reasoning at level three (3) and below.  She can have occasional contact with coworkers, supervisors, and superficial contact with the general public." (R. 28.)  The ALJ provided a summary of the evidence that went into this finding. (R. 28-32.)

At step four, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could return to her past relevant work as a housekeeping cleaner. (R. 32-33.)  The ALJ thus found Plaintiff was not disabled.  (R. 33.)

---

[5] The Court notes, however, that Plaintiff's reply brief was <u>four times</u> the length allowed by the Scheduling Order (ECF No. 15 at 2).  Plaintiff's counsel is cautioned that briefs violating this Court's rules or orders are subject to being stricken.

## IV.    Issues

Plaintiff asserts the ALJ erred by: (i) concluding Plaintiff engaged in substantial gainful activity in 2017 and 2018 (ECF No. 16 at 2, 7-8); (ii) failing to properly evaluate the medical opinions of treating physician Dr. Dominic Losacco and consultative examiner Dr. Larry Vaught (*id.* at 3-5, 7, 9-14); (iii) failing to consider all her impairments at step two (*id.* at 2, 7-8); (iv) failing to consider Listing 12.11 for neurodevelopmental disorders at step three (*id.* at 2-3, 7-9); (v) failing to consider and account for all her impairments in the RFC assessment (ECF No. 25 at 10-12); and (vi) concluding that her prior work as a housekeeping cleaner qualified as past relevant work (ECF No. 16 at 13).[6] The Court finds no reversible error in the ALJ's decision.

## V.    Analysis

### A.    Any Substantial Gainful Activity Error was Harmless.

At step one of the sequential process, the ALJ considers the claimant's "work activity, if any."  20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaged in substantial gainful activity ("SGA"), the ALJ will find that the claimant is not disabled.  *Id.* Substantial gainful activity is "work activity that involves doing significant physical or mental activities . . . that [a claimant does] for pay or profit."  *Id.* § 404.1572(a)-(b).[7]  For a self-employed person, the ALJ first determines if the claimant rendered services that are significant to the operation of the business and receives a substantial income from that business.  20 C.F.R. § 404.1575(a)(2)(i).[8]  Where the claimant operates the business entirely by herself, any services she renders are significant.  *Id.* § 404.1575(b)(1).  To

---

[6] Plaintiff's arguments have been reorganized for clarity.

[7] *See generally* 20 C.F.R. § 416.972 for Title XVI.

[8] *See generally* 20 C.F.R. § 416.975 for Title XVI.

determine the actual value of work performed, the ALJ looks at the claimant's gross income and then deducts certain expenses and the value of significant unpaid help, if any. *Id.* § 404.1575(c)(1). In this case, there is no evidence of any such expenses or unpaid help. Instead, the ALJ and all parties have simply looked at Plaintiff's self-employment income as reported on her FICA earnings. (R. 26; ECF No. 16 at 2, 8; ECF No. 21 at 9.) Therefore, the ALJ will find this countable income to be substantial if it averages more than the amounts listed in § 404.1574(b)(2).[9]

Generally, if the claimant's work as an employee or as a self-employed person was continuous without significant change in work patterns or earnings, the ALJ will average the claimant's earnings over each period for which a different SGA earnings level applies.[10] *Id.* § 404.1574a(a)-(b).[11] If the average monthly earnings exceed a prescribed threshold, substantial gainful activity is presumed. *Id.* § 404.1574(b)(2)(ii). Conversely, if they are equal to or below the threshold amount, the claimant is presumed not to be engaged in substantial gainful activity—at least for employees.[12] *Id.* § 404.1574(b)(3)(1); *see also Sheppard v. Astrue,* 426 F. App'x 608, 610 (10th Cir. 2011) (unpublished) (the regulations not only "raise a presumption *in favor* of a finding of SGA if the claimant's average monthly earnings *exceed* the threshold level . . . [they] also raise a presumption

---

[9] *See generally* 20 C.F.R. § 416.974 for Title XVI.

[10] If there was a significant change in the work pattern or earnings, then the ALJ would average the earnings over each separate period of work. 20 C.F.R. § 404.1574a(c).

[11] *See generally* 20 C.F.R. § 416.974a for Title XVI.

[12] For the self-employed, there are additional considerations that may result in a finding of substantial gainful activity, even if the average is less than the threshold amount. *See* 20 C.F.R. § 404.1575(c)(2)(ii).

*against* a finding of SGA if the claimant's average monthly earnings are *below* the threshold level").[13]

Plaintiff contends the ALJ erred in determining she engaged in substantial gainful activity in 2017 and 2018, because her earnings did not exceed the average monthly income threshold amounts in either year.  (ECF No. 16 at 7-8.)  In calendar years 2017 and 2018, an average monthly income of $1,170.00 and $1,180.00, respectively, constituted substantial gainful activity for non-blind individuals.  *See* 20 C.F.R. § 404.1574(b)(2); Program Operations Manual System ("POMS") DI 10501.015(B).  Plaintiff's 2017 annual income was $13,677.00.[14]  (R. 334.)  Assuming Plaintiff worked continuously throughout 2017, this would result in an average monthly income of $1,139.75—less than the $1,170.00 threshold.[15]  Using the same assumptions, Plaintiff's 2018 earnings of $13,067.00 (R. 26, 334), would result in an average monthly income of $1,088.92—less than the $1,180.00 threshold for that year.  Under these calculations Plaintiff did not engage in substantial gainful activity in 2017 or 2018.

The Commissioner concedes Plaintiff may not have engaged in substantial gainful activity in 2017 and 2018 but asserts any error the ALJ made in calculating Plaintiff's earnings was harmless because: (1) the ALJ considered the whole record, including the evidence from 2016 through 2019; (2) the ALJ proceeded to consider Plaintiff's disability claim through subsequent steps of the sequential analysis; and (3) the reasons the ALJ gave for finding Plaintiff not disabled during the relevant period would also apply to

---

[13] Unpublished decisions are not precedential, but they may be cited for their persuasive value.  10th Cir. R. 32.1(A).

[14] The ALJ found the income to be $13,067.00.  (R. 26.)

[15] The ALJ made no findings regarding the continuous nature of Plaintiff's work.

calendar years 2017 and 2018, because Plaintiff did not allege that her condition materially changed.  (ECF No. 21 at 9.)

The Court agrees any step-one error was harmless.  The ALJ did not deny Plaintiff's disability claim at step one, and he proceeded to consider Plaintiff's claim through subsequent steps of the sequential analysis, including assessing her RFC.  *See Dickison v. Colvin,* No. CIV-13-1022-F, 2014 WL 4418117, at *4 (W.D. Okla. Sept. 8, 2014) ("Because the ALJ proceeded past step one to determine whether or not Plaintiff was disabled, any error in the ALJ's step one determination is harmless.").  Furthermore, the ALJ considered evidence from 2017 and 2018 as part of his RFC analysis and ultimately found Plaintiff was not disabled from January 2, 2015, through November 13, 2019, a period that includes both challenged years.[16]  (R. 29-33.)  Because the ALJ considered all the evidence of record and concluded Plaintiffs' RFC did not preclude the performance of her past relevant work from her initial alleged onset date through the date of his decision , no reasonable factfinder could then have found Plaintiff "disabled"—even without substantial gainful work activity in 2017 and 2018.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (a finding of harmless error is appropriate where the court can confidently say no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way).

---

[16] Earlier in his decision, the ALJ stated, "The remaining findings address the period(s) the claimant did not engage in substantial gainful activity."  (R. 26.)  However, as this discussion illustrates, the ALJ went on to consider evidence throughout the entire period—including during the years he found Plaintiff to have engaged in substantial gainful activity.  As such, the Court finds this stray statement does not negate the impact of the ALJ's subsequent findings.

## B.     The ALJ Did Not Err in His Consideration of Medical Opinions.

Plaintiff's remaining arguments generally relate to the ALJ's analysis of the evidence at steps two, three, and four—primarily stemming from the ALJ's treatment of the medical opinions of Dr. Losacco and Dr. Vaught.

### 1.     The Medical Evidence

Dr. Losacco managed Plaintiff's medications for major depressive disorder, anxiety disorder with panic symptoms, and ADHD from January 2014 through January 2019.  (R. 443-53, 458-59, 508-10, 568-71.)  On January 16, 2018, Dr. Losacco completed a form titled "Mental Capacity Assessment," noting Plaintiff's diagnoses as major depression and adult ADHD.  (R. 503-05.)  Dr. Losacco opined that Plaintiff had an "extreme" limitation in 14 of the 22 functional areas he assessed, including her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; and to accept instructions and respond appropriately to criticism from supervisors.  (*Id.*)  Dr. Losacco also opined that Plaintiff had a "marked" limitation in six functional areas, including her ability to work in coordination with or in proximity to others without being distracted by them; to make simple work-related decisions; and to respond appropriately to changes in the work setting.  (*Id.*)

In a letter dated April 25, 2019, Dr. Losacco stated Plaintiff was somewhat disorganized, inattentive, and impulsive; that her ability to complete tasks was impaired; and that her multiple head traumas may have contributed to some of her cognitive disabilities.  (R. 573.)  He was hopeful Plaintiff would "have some further degree of improvement" with regular treatment but indicated it was "unlikely [she] would be able to become gainfully employed, at least in the near future."  (*Id.*)

Dr. Vaught performed a consultative neuropsychological examination of Plaintiff on March 5, 2018, that included cognitive testing.  (R. 551-55.)  Dr. Vaught diagnosed Plaintiff with mild neurocognitive disorder, unspecified anxiety disorder with panic symptoms, and chronic adjustment disorder with depressed mood.  (R. 554.)  Dr. Vaught also completed a form titled "Medical Source Statement of Ability to do Work-Related Activities (Mental)."  (R. 556-58.)  He opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out complex instructions; and mildly limited in her ability to understand, remember, and carry out simple instructions and to make judgments on complex work-related decisions.  (R. 556.)  Dr. Vaught referenced the results of Plaintiff's cognitive testing as support for these limitations.  (R. 555-56, 559.) Dr. Vaught further opined that Plaintiff was markedly limited in her ability to interact appropriately with the public and moderately limited in her ability to interact appropriately with supervisors and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting.  (R. 557.)  Dr. Vaught explained that Plaintiff's treatment with "multiple psychotropics," difficulty in crowds, proneness to anxiety with panic symptoms in crowds, and fatigue supported the adaptation and social interaction limitations he identified.  (*Id.*)

### 2.      The ALJ's Treatment of Dr. Losacco's Opinions

Plaintiff contends the ALJ erred in evaluating Dr. Losacco's opinions, because he failed to consider the relevant factors in his analysis of such opinions and improperly relied on Plaintiff's failure to seek counseling or more extensive treatment to discredit them.  (ECF No. 16 at 3-5, 9-14.)

For claims filed before March 27, 2017, the ALJ must give a treating physician's medical opinion controlling weight if it "is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[17]  When a treating physician's opinion is not given controlling weight, the ALJ must explain what weight, if any, he assigned to the opinion after considering the pertinent factors. *Watkins v. Barnhart,* 350 F.3d 1297, 1300-01 (10th Cir. 2003).  Those factors are: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the degree to which the medical source presents relevant evidence to support the opinion; (4) the opinion's consistency with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that may support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6).  After considering these factors, the ALJ must provide "good reasons" for the weight assigned to a treating physician's opinion, and "specific, legitimate reasons" if he completely rejects it. *Watkins,* 350 F.3d at 1301.  The ALJ is not required to discuss every factor when deciding how much weight to give a treating physician's opinion, as not every factor will apply in every case. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).  In sum, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting *Watkins,* 350 F.3d at 1300).

Although the ALJ did not use the exact wording from the regulation, it is clear from his decision that he did not give Dr. Losacco's opinions controlling weight.  (*See* R. 32 (finding the opinions "not persuasive").)  As part of this finding, the ALJ determined that Dr. Losacco's opinions were "inconsistent with . . . medical evidence of record."  (R. 32.)

---

[17] *See generally* 20 C.F.R. § 416.927 for Title XVI.

This finding was supported by substantial evidence—Dr. Losacco's numerous marked and extreme limitations were inconsistent with the opinions of Dr. Vaught, who identified only one marked limitation and no extreme limitations.  (R. 556-58.)  Therefore, the ALJ did not err in declining to give Dr. Losacco's opinions controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2) (requiring an opinion be both well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record).[18]

The ALJ also sufficiently considered the relevant factors in rejecting Dr. Losacco's opinions as not persuasive—including the examining relationship, the treatment relationship, and consistency.  *See* 20 C.F.R. § 404.1527(c)(1)-(2), (4).  The ALJ acknowledged that Dr. Losacco treated Plaintiff with psychotropic medications for depression, ADHD, and panic disorder between January 2014 and April 2019.  (R. 29.)  In so doing, the ALJ considered the examining relationship factor as well as the length, nature, and extent of the treatment relationship factor.

The ALJ also cited the inconsistency between Dr. Losacco's opinions and the treatment he provided to Plaintiff.  (R. 32.)  In reaching this conclusion, the ALJ determined that Dr. Losacco's treatment consisted of "routine medication management."  (*Id.*)  This is an accurate description of the longitudinal treatment provided by Dr. Losacco.  (*See, e.g.,* R. 443-53, 568-71.)  Contrary to Plaintiff's assertion, a physician's prescribed course of treatment is an appropriate consideration as to the nature and extent of treatment.  *See Arterberry v. Saul,* 743 F. App'x 227, 229 (10th Cir. 2018)

---

[18] The ALJ would also have been hard-pressed to find Dr. Losacco's opinions well-supported by medically acceptable clinical techniques, given that Dr. Losacco did not provide any medical/clinical findings in support of the numerous marked and extreme limitations he identified on the Mental Capacity Assessment form despite explicit instructions to do so.  (R. 503-05.)

(unpublished) ("[T]he ALJ accurately noted that Dr. Brown's treatment plan was limited to medication management.  The nature and extent of the treatment provided are legitimate grounds for assessing the weight of a treating physician's opinion."); *Dixon v. Colvin,* 556 F. App'x 681, 682-83 (10th Cir. 2014) (unpublished) (finding substantial evidence supported ALJ's decision to assign minimal weight to a treating physician's "extreme limitations" because such limitations were inconsistent with "the limited mental health treatment [the physician] prescribed").

The ALJ further explained that Dr. Losacco's opinions were inconsistent with the medical evidence of record.  (R. 32.)  The ALJ specifically discussed Plaintiff's emergency room visit following her most recent motor vehicle accident in April 2015, noting Plaintiff experienced some confusion initially but was easily oriented, and that her confusion resolved before she was discharged the same day.  (*Id.*)  Elsewhere in the decision, the ALJ also accurately noted that the imaging revealed no significant head injury.  (R. 29.)  Thus, the ALJ explained the inconsistencies between Dr. Losacco's opinions and the record as a whole, and his reasons for finding Dr. Losacco's opinions not persuasive are sufficiently specific.  *Cf. Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. William's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.").

Lastly, the ALJ found Dr. Losacco's opinions inconsistent with Plaintiff's failure to pursue more extensive mental health treatment, such as counseling or inpatient treatment.  (R. 32.)  Plaintiff does not dispute the ALJ's characterization of Dr. Losacco's treatment as routine medication management.  Rather, Plaintiff contends it was error for

the ALJ to draw a negative inference from her failure to participate in counseling, because Dr. Losacco never recommended counseling and the ALJ did not explore whether she had an acceptable reason for her limited treatment.[19]  (ECF No. 16 at 10, 13-14.)

Notably, the ALJ did address the limited medical records at the January 2018 administrative hearing, and he ordered a consultative examination because Plaintiff's case was "very poorly developed."  (R. 72, 86-88.)  Plaintiff's attorney agreed the record did not contain "a whole lot of records from Dr. Losacco" and explained this was due to Plaintiff's tardiness in returning a records release form.  (R. 72.)  The ALJ then asked Plaintiff why "she had not been pursuing the development of the record," and Plaintiff explained she thought she was going to get a job.[20]  (R. 73.)  Despite the opportunity to do so at the administrative hearings and in the briefing, neither Plaintiff nor her counsel identified any reasons for Plaintiff's limited treatment that the ALJ ignored.  *See Wilson v. Astrue,* 602 F.3d 1136, 1149 (10th Cir. 2010) (noting the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the case such that claimant's claims are adequately explored).  In any event, Plaintiff's failure to pursue more extensive treatment was not the sole reason the ALJ discounted Dr. Losacco's opinions.

---

[19] Plaintiff cites to Social Security Ruling ("SSR") 96-7p as support for this contention. For decisions "on or after March 28, 2016," SSR 96-7p has been superseded by SSR 16-3p.  SSR 16-3p, 2017 WL 5180304, at *1 (October 25, 2017).  Regardless, the Court notes SSR 16-3p similarly provides that the ALJ "will not find an individual's symptoms inconsistent with the evidence" due to a lack of treatment "without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." *Id.*, at *9.

[20] Notably, after the January 2018 hearing, Plaintiff submitted additional records from Dr. Losacco.  (*See* R. 507, 572.)  These records are consistent with the earlier records, showing primarily medication management by Dr. Losacco and no recommendation that Plaintiff seek additional treatment.  (R. 508-10, 568-71.)  There is no indication that any other records from Dr. Losacco existed that were not provided to the ALJ before his decision.

As set forth above, the ALJ provided two additional reasons, supported by the record, for finding Dr. Losacco's opinion not persuasive.

Based on the foregoing, the Court finds the ALJ's decision is "sufficiently specific" to make clear to this Court and subsequent reviewers the weight he assigned to Dr. Losacco's opinions and the reasons for that weight. *Oldham*, 509 F.3d at 1258. The ALJ did not commit reversible error in his consideration of Dr. Losacco's opinions.

### 3.   The ALJ's Treatment of Dr. Vaught's Opinions

The ALJ must also determine the weight to be accorded to the medical opinions of examining physicians, like Dr. Vaught, using the factors set out in the regulations cited above. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the regulatory] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted). When the ALJ relies on an examining physician's opinion, "he must explain the weight he is giving to it." *Id.*

Plaintiff contends the ALJ "totally ignored" Dr. Vaught's opinions (ECF No. 16 at 13), but this is not borne out in the decision. After thoroughly summarizing Dr. Vaught's consultative examination findings and opinions, the ALJ stated he was "somewhat persuaded" by Dr. Vaught's assessment. (R. 30-31.) The ALJ then found Dr. Vaught's assessment was consistent with Dr. Losacco's treatment notes, which showed only routine medication management, and with the RFC assessment, which included skill level, reasoning level, and social limitations. (R. 31.) Thus, the ALJ did not ignore Dr. Vaught's opinions, but rather relied on them when formulating the RFC. Moreover, both parties agree that the RFC assessment is "largely consistent" with Dr. Vaught's opinions. (ECF

No. 21 at 8; ECF No. 25 at 9.)  Accordingly, further analysis of Dr. Vaught's opinions would not advance Plaintiff's disability claim, and any error the ALJ made in weighing his opinions would be considered harmless.  *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding the ALJ's failure to weigh a medical opinion constituted harmless error because the opinion was "generally consistent" with the ALJ's RFC determination).

### C.     Any Error at Step Two was Harmless.

Plaintiff argues that the ALJ failed to adequately consider her ADHD, mild neurocognitive disorder, unspecified anxiety disorder with panic symptoms, and adjustment disorder with depressed mood at step two of the sequential evaluation.  (ECF No. 16 at 2, 8.)

The ALJ considers the "medical severity" of a claimant's impairments at step two of the sequential evaluation.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  A claimant who does not have a severe medically determinable impairment, or a combination of impairments that is severe, is not disabled.  *Id.* § 404.1520(a)(4)(ii).

Because the ALJ found Plaintiff had severe impairments at step two and proceeded to the subsequent steps of his analysis, any failure in identifying additional severe impairments does not constitute reversible error.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be

denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Furthermore, "a failure to find an impairment medically determinable," if in error, is "obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin,* 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished). As explained in Section V(E) below, the ALJ considered Plaintiff's ADHD, mild neurocognitive disorder, unspecified anxiety disorder with panic symptoms, and adjustment disorder with depressed mood in the RFC assessment.  The Court identifies no reversible step-two error in the ALJ's consideration of these conditions.

### D.     The ALJ's Analysis at Step Three was Sufficient.

Plaintiff contends the ALJ erred at step three, because he failed to consider her mental impairments under Listing 12.11 (Neurodevelopmental disorders) and ignored Dr. Losacco's findings when assessing the "paragraph B" criteria.  (ECF No. 16 at 2-5, 8-12.) Based on Dr. Losacco's opinions, Plaintiff asserts that she satisfies the "paragraph B" criteria for Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), 12.11 (Neurodevelopmental disorders), and 12.15 (Trauma- and stressor-related disorders).  (ECF No. 16 at 5, 12.)

At step three of the sequential evaluation, the ALJ considers whether a claimant's severe impairment(s) meets or equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity.  *See* 20 C.F.R. § 404.1520(a)(4)(iii) & pt. 404, subpt. P, app. 1 ("the Listings").  If a claimant's medically severe impairment(s) meets or equals one of the listed impairments, she will be found disabled at step three without considering her age, education, and work experience.  *Id.* § 404.1520(d).  In order to meet a Listing, the claimant's impairment(s) must satisfy <u>all</u>

of the criteria of that Listing.  *Id.* § 404.1525(c)(3).[21]  The ALJ is required "to discuss the evidence and explain why he found that [the claimant] was not disabled at step three." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996).  However, an ALJ's failure to adequately explain his step-three findings may constitute harmless error if the "ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three."  *Fischer-Ross v. Barnhart,* 431 F.3d 729, 735 (10th Cir. 2005).

At step three, the ALJ specifically considered Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma- and stressor-related disorders).  (R. 26-27.)  All three Listings include identical "paragraph B" functional criteria, requiring evidence that the claimant has an extreme limitation of one—or a marked limitation of two—of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.[22]  20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06, 12.15 (2019).  The ALJ found that these "paragraph B" criteria were not satisfied.  (R. 26-28.)  Plaintiff complains the ALJ did not consider Listing 12.11 (Neurodevelopmental disorders).  However, this Listing requires the same "paragraph B" criteria as those the ALJ did consider.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.11 (2019).  As such, if the ALJ's decision as to the other Listings was correct, there could be no harm from not also considering (and necessarily rejecting) Listing 12.11.

---

[21] *See generally* 20 C.F.R. § 416.925(c)(3) for Title XVI.

[22] The three Listings also include an alternative list of "paragraph C" criteria.  *Id.*  The ALJ found the "paragraph C" criteria were not satisfied (R. 28), a conclusion not disputed by Plaintiff.  This opinion, therefore, focuses on whether the ALJ's decision regarding the "paragraph B" criteria was supported by substantial evidence.

In analyzing the "paragraph B" criteria, the ALJ found Plaintiff had a moderate limitation in interacting with others; mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself.  (R. 27-28.)  Because Plaintiff's mental impairments did not result in at least one extreme limitation or two marked limitations, the ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria.  (R. 28.)

In making these determinations, the ALJ specifically discussed Plaintiff's hearing testimony and Dr. Vaught's examination and opinions.  (R. 26-28.)  However, the ALJ also noted that his conclusions were "supported by the discussion of the evidence as set out in this opinion."  (R. 27.)  That discussion—found later in the decision—included the ALJ's findings as to the comparative persuasiveness, or weight, of the opinions of Drs. Vaught and Losacco.  (R. 31-32.)  As the ALJ found Dr. Losacco's opinions not persuasive—a finding this Court has determined was supported by substantial evidence[23]—it is logical and correct that the ALJ did not then rely on Dr. Losacco's opinions in assessing Plaintiff under the "paragraph B" criteria.  Having rejected Dr. Losacco's opinions, there was no basis for the ALJ to find Plaintiff markedly limited in two areas (or extremely limited in one).

In any event, even if the ALJ had failed to sufficiently discuss the medical source opinion evidence at step three, the ALJ's findings after that step "conclusively negate the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Fischer-Ross,* 431 F.3d at 735.  Any error at step three would, then, be harmless.

---

[23] *See supra* Section V(B)(2).

**E.    The RFC Assessment is Supported by Substantial Evidence.**

Plaintiff next asserts the ALJ erred in his RFC assessment, because he failed to consider her ADHD, mild neurocognitive disorder, unspecified anxiety disorder with panic symptoms, and adjustment disorder with depressed mood.[24]  The Court finds no error in the ALJ's analysis of these mental impairments.

The ALJ identified major depressive disorder and generalized anxiety disorder as severe impairments, but he did not include ADHD or mild neurocognitive disorder among Plaintiff's medically determinable impairments at step two.  (R. 26.)  Nonetheless, the ALJ thoroughly discussed Plaintiff's hearing testimony and function report, as well as the findings of her treating, consultative, and reviewing physicians related to these conditions in the RFC discussion—this included the diagnoses for all four disorders Plaintiff lists and related medical findings.  (R. 28-32.)  The ALJ also noted Plaintiff's testimony that she could not work with numbers, pay attention, or complete tasks due to multiple traumatic brain injuries.  (R. 29.)  And, the ALJ noted Plaintiff's statement on her function report that she was unable to work due to trouble paying attention, organizing her thoughts and activities, thinking clearly, and multi-tasking.  (*Id.*)  The ALJ then concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence of record.  (R. 30.)  In reaching this conclusion, the ALJ specifically found Plaintiff's allegations inconsistent with Dr.

---

[24] Plaintiff did not make this specific assertion until her improperly oversized reply brief. (ECF No. 25 at 10-11.)  However, the Court addresses this argument because: (1) Plaintiff raised the ALJ's consideration of the opinions of Drs. Losacco and Vaught in the RFC in her opening brief, and these physicians diagnosed the mental impairments at issue; (2) the Commissioner argues the ALJ considered and accounted for all of Plaintiff's mental impairments in the RFC; and (3) the Court's finding of harmless error at step two relies, in part, on the ALJ's proper evaluation of Plaintiff's mental impairments when assessing the RFC at step four.

Vaught's finding that Plaintiff had no difficulty solving simple math problems and Plaintiff's cognitive test results showing an average score in the areas of concentration, persistence, and pace. (*Id.*) The ALJ then incorporated the functional limitations identified by Dr. Vaught into the RFC determination. (R. 28.) Thus, the ALJ considered the evidence related to Plaintiff's mental impairments, including ADHD and mild neurocognitive disorder, and explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Accordingly, the ALJ's decision is supported by substantial evidence, despite any failure to identify ADHD and mild cognitive disorder as medically determinable impairments at step two. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal . . . . [W]e cannot insist on technical perfection.").

### F.    The ALJ Did Not Err in Determining Plaintiff Could Return to Her Past Relevant Work.

Plaintiff raises two points of error related to the ALJ's step-four determination that she could return to her past relevant work as a housekeeping cleaner. Plaintiff first alleges that the ALJ failed to provide sufficient evidence regarding the availability of housekeeping cleaner jobs in support his step-four determination. (ECF No. 16 at 13.) Plaintiff next asserts the ALJ erred by concluding that her housekeeping cleaner job qualified as past relevant work. (*Id.*)

At step four of the sequential evaluation, the ALJ considers the claimant's RFC and determines whether the claimant's impairments prevent her from performing her past

relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  It is the claimant's burden at step four to show she is unable to perform her past relevant work "*both* as she actually performed that work in the past *and* as it is generally performed in the national economy."  *Adams v. Colvin*, 616 F. App'x 393, 394 (10th Cir. 2015) (unpublished).  The claimant is not disabled if she is able to return to her past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

> **1.  The ALJ Was Not Required to Provide Evidence Regarding the Availability of Housekeeping Cleaner Jobs.**

Plaintiff asserts the ALJ failed to demonstrate there were housekeeping cleaner jobs "readily available in her geographic area" of Vinita, Oklahoma.  (ECF No. 16 at 13.) This is not part of the step-four analysis of whether Plaintiff can return to her past relevant work.[25]  At step four, the ALJ does not consider "vocational factors of age, education, and work experience or whether [the claimant's] past relevant work exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(b)(3);[26] *see also Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) ("The Commissioner need not establish that a prior job exists in significant numbers in the national economy. . . .").  Plaintiff's argument is without merit.

> **2.  Plaintiff's Job as a Housekeeping Cleaner Qualifies as Past Relevant Work.**

Plaintiff next asserts "there was absolutely no evidence to suggest [she] was engaged successfully in performing work as a housekeeper/cleaner."  (ECF No. 16 at 13.)

---

[25] It is possible Plaintiff is thinking of the step-five determination as to whether there exist <u>other</u> jobs that Plaintiff can do.  Even then, a finding of regional availability is not required if the jobs exist in significant numbers in the <u>national</u> economy. *See Raymond v. Astrue,* 621 F.3d 1269, 1274-75 n.2 (10th Cir. 2009) ("the relevant test [at step five] is *either* jobs in the regional or jobs in the national economy.").

[26] *See generally* 20 C.F.R. § 416.960 for Title XVI.

A claimant's past employment qualifies as past relevant work if it (a) was done within the last 15 years; (b) lasted long enough for her to learn to do it; and (c) was substantial gainful activity.  20 C.F.R. § 404.1565(a).[27]  Plaintiff's argument fails because the record contains sufficient evidence showing that her housekeeping cleaner job meets these criteria.

### a.   Plaintiff Worked as a Housekeeping Cleaner Within 15 years of the ALJ's decision.

Substantial evidence supports the ALJ's finding that that Plaintiff performed past relevant work as a housekeeping cleaner "within 15 years of the date of this decision." (R. 33.)  As the ALJ noted, on December 15, 2017, Plaintiff reported she had been self-employed as a house cleaner from "2012 to Present."  (R. 397 (cited at R. 26).)  Moreover, at the January 2018 administrative hearing, Plaintiff testified she started a house cleaning business in 2013 and was self-employed as a house cleaner in 2013, 2014, 2015, and 2016. (R. 83.)  On October 24, 2019, Plaintiff's counsel completed a Work History Report on Plaintiff's behalf and indicated Plaintiff was self-employed as a housekeeper from January 2012 through December 2015.  (R. 423-30.)  In addition, Plaintiff's certified earnings records reflect self-employment income from 2012 through 2018.  (R. 318-19.)

### b.   Plaintiff Worked as a Housekeeping Cleaner Long Enough to Learn How to do the Job.

Substantial evidence also supports the ALJ's finding that Plaintiff worked as a housekeeping cleaner for a sufficient length of time to learn how to do the job and provide average performance.  (R. 33.)

At the October 2019 administrative hearing, the ALJ asked the VE to describe Plaintiff's past work.  (R. 64.)  The VE testified that Plaintiff's past work was classified as a housekeeping cleaner and indicated that such job had a Specific Vocational Preparation

---

[27] *See generally* 20 C.F.R. § 416.965 for Title XVI.

("SVP") level of two.  (R. 64-65.)  The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the SVP Scale.  *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991).  SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  There are nine SVP levels, with level one representing the least amount of time required and level nine representing the most.  *Id.*  The DOT assigns the housekeeping cleaner job an SVP level of two, which means a typical worker can learn how to perform the job with training consisting of "[a]nything beyond short demonstration up to and including 1 month."  DOT § 323.687-014, 1991 WL 672783.

As noted above, Plaintiff indicated she worked as a house cleaner for varying periods of time, none of which were less than four years (R. 83, 397, 423), and Plaintiff's certified earnings records reflect self-employment income for seven consecutive years beginning in 2012 (R. 318-19).  This far exceeds the one-month period generally required to learn the housekeeping cleaning job and indicates an ability to provide average performance.

### c.   Plaintiff's Housekeeping Cleaner Job was Substantial Gainful Activity.

Finally, substantial evidence supports the ALJ's finding that Plaintiff performed the housekeeping cleaner job at the level of substantial gainful activity.  (R. 33.)  The legal standards for determining whether a work activity constitutes substantial gainful activity are set forth in Section V(A) above.  Although Plaintiff challenges the ALJ's determination that she performed substantial gainful activity in calendar years 2017 and 2018, she does not challenge the ALJ's substantial gainful activity determination for 2016.  (ECF No. 16 at 2, 7-8.).  In his decision, the ALJ correctly noted the presumptive earnings amount for

substantial gainful activity for non-blind individuals in 2016 was an average monthly income of $1,130.00. (R. 26.) *See* 20 C.F.R. § 404.1574(b)(2); POMS DI 10501.015(B). Plaintiff's earnings records show she earned $19,202.13 in 2016 (R. 26, 334-35)—of which at least $17,392.00 was earned from self-employment (R. 332). An annual income of $17,392.00 averages to a monthly income of $1,449.33—well above the threshold amount. As such, Plaintiff was presumptively engaged in substantial gainful activity that year. 20 C.F.R. § 405.1575(c)(2)(i).

The ALJ appropriately found all three criteria met and that Plaintiff's housekeeping cleaner job was past relevant work.

## VI.   Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 2nd day of September, 2022.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT